Filed 7/6/15  L.S. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| L.S., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F071411 <br><br> (Super. Ct. No. 11CEJ300170) <br><br><br> **OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Brian M. Arax, Judge.

L.S., for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

[*]      Before Levy, Acting P.J., Gomes, J. and Kane, J.

L.S. (mother) seeks an extraordinary writ (Cal. Rules of Court, rule 8.452) from a juvenile court's order denying her reunification services and setting a Welfare and Institutions Code section 366.26[1] hearing to select and implement a permanent plan for her 20-month-old son Shawn C. Mother claims the court's order is erroneous because it was made while she was in custody and because she was never found to be an unfit parent. She also would like Shawn and his older siblings to have the chance to become acquainted with one another. On review, we conclude mother's petition is meritless and will deny relief.

## PROCEDURAL AND FACTUAL HISTORY

In early January 2015, mother was arrested after she was found breaking the windows of her former partner's home and became involved in a verbal and physical altercation with law enforcement. All the while, mother left one-year-old Shawn alone at her home. When mother could not identify anyone to care for Shawn while she was in custody, the Fresno County Department of Social Services (department) detained Shawn and initiated the underlying juvenile dependency proceedings.

This was not the first time that mother had come to the attention of the department and the juvenile court. In 2011, another child was removed from mother due to her issues of substance abuse, domestic violence and mental health. Although mother received reunification services for that child, the court later terminated those services and, in 2013, terminated mother's parental rights to that child. The child was later adopted.

Although mother was released from jail after her arrest, she made no contact with the department to inquire as to Shawn's welfare or to request visitation for more than a month. By mid-March 2015, she was once again in custody, where she has since

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

remained.  Nevertheless, mother received notice of these proceedings, was appointed counsel, and attended many of the hearings while she was in custody.

In this case, the department recommended that the court exercise its dependency jurisdiction over Shawn due to mother's neglect (§ 300, subd. (b)) and because Shawn's sibling had been removed from mother's custody due to her neglect and there was a substantial risk that Shawn would be neglected as well (§ 300, subd. (j)).  The department also recommended that the court adjudge Shawn a juvenile dependent, remove him from parental custody, and deny mother reunification services.  The department based its no services recommendation on section 361.5, subdivision (b)(10) and (11), namely:  the court terminated reunification services for Shawn's sibling because mother failed to reunify with the sibling after he was removed from her custody and she had not subsequently made a reasonable effort to treat the problems that led to the sibling's removal (§ 361.5, subd. (b)(10)); and mother's parental rights over that sibling of Shawn's had been permanently severed and she had not subsequently made a reasonable effort to treat the problems that led to the sibling's removal (§ 361.5, subd. (b)(11)).

In April 2015, the juvenile court conducted a combined jurisdictional and dispositional hearing, at which it received the department's evidence and heard mother's testimony.  Regarding her subsequent efforts after her rights to Shawn's sibling were terminated, mother described seeing a psychiatrist who prescribed medication to address her mental health condition.  She added that the doctor took her off the medication while she was pregnant with Shawn.  However, she never returned to see the psychiatrist after Shawn was born.  She could not explain why she did not return for any counseling after Shawn's birth.

After argument and submission of the case, the court exercised its dependency jurisdiction over Shawn under section 300, subdivisions (b) and (j).  It further found clear and convincing evidence of a significant risk of harm to Shawn and ordered his removal from mother's physical custody.  Having also made the necessary findings, the court

3

denied mother reunification services under section 361.5, subdivision (b)(10) and (11). The court concluded by setting a permanency planning hearing pursuant to section 366.26 for Shawn.

## DISCUSSION

The purpose of writ proceedings such as this is to facilitate review of a juvenile court's order setting a section 366.26 hearing to select and implement a permanent plan for a dependent child. (Cal. Rules of Court, rule 8.450(a).) A court's decision is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is petitioner's burden to raise specific issues and substantively address them. (§ 366.26, subd. (*l*).) This court will not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Mother claims, in conclusory fashion, that the court's setting order was erroneous because it was made while she was in custody. She offers no explanation of, or supporting legal authority for, her claim. California law does require notice and transportation for an incarcerated parent as well as the parent's presence at a dispositional hearing. (Pen. Code, § 2625.) In this case, mother received the full benefits of Penal Code section 2625. However, the law authorizing the setting of a section 366.26 permanency planning hearing when a juvenile court denies a parent reunification services (§ 361.5, subds. (b), (c) & (f)) at a dispositional hearing, does not foreclose the juvenile court from setting such a hearing simply because a parent is incarcerated. Indeed, section 361.5, subdivisions (e) and (f) specifically permit a juvenile court, under certain circumstances, to deny an incarcerated parent reunification services and set a section 366.26 permanency planning hearing.

Mother next claims she was never found to be an unfit parent. Again, she offers no explanation of, or supporting legal authority for, her claim.

California's dependency law does not use the term "parental unfitness." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 224, fn. 3.) Instead, the law requires the juvenile

4

court make a finding by clear and convincing evidence that awarding custody of a dependent child to a parent would be detrimental to the child. (*Ibid.*) In this case, the juvenile court made such a finding pursuant to section 361, subdivision (c)(1) at the dispositional hearing.[2]

Finally, mother comments that she would like Shawn and his older siblings to have the chance to become acquainted with one another.[3] We do not interpret her comment as a claim of judicial error. Once again, mother fails to substantively address how the court could have erred by not taking some action in this regard. In any event, she overlooks the fact that she made no such request of the juvenile court and therefore arguably forfeited any possible claim of error. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Mother further ignores the absence of any evidence that the juvenile court had jurisdiction over her other children under section 300. Without that, the court could not have made any orders effecting them.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is immediately final as to this court.

---

**2** Section 361, subdivision (c)(1) provides that a dependent child may be taken from the physical custody of her parents if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by the which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody."

**3** In addition to Shawn's sibling whom the juvenile court terminated mother's parental rights as to and who was later adopted, mother apparently has two other children who live with their father. Since apparently 2012, there has been a five-year restraining order in effect against mother having any contact with those children.